# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLA NORMAN, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 17-5181 |
| | : | |
| ALLIED INTERSTATE, LLC and | : | |
| LVNV FUNDING, LLC, | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                         May 25, 2018

## <u>MEMORANDUM</u>

This case involves alleged violations of the Fair Debt Collection Practices Act by a debt buyer and the agency it hired to pursue collection. Plaintiff alleges that the collection letters she received from the defendants violated the FDCPA because they were misleading—specifically, that the letters implied the debts were legally enforceable, when in fact they were not, and that the letters failed to communicate effectively her right to dispute the validity of the debts. In a joint Motion to Dismiss, the defendants dispute that their letters violated the FDCPA, and assert that the debt buyer defendant cannot be liable as a matter of law. The threshold question is whether debt buyers which acquire defaulted (and often time-barred) debt in order to collect upon it qualify as "debt collectors" under the Act. I conclude that they do, and further conclude that Plaintiff has adequately alleged that the collection letters violated the Act. Accordingly, the Motion to Dismiss will be denied.

**I.    Background**

In 2016, Plaintiff Darla Norman received two nearly identical letters from Defendant Allied Interstate, LLC, each attempting to collect on an alleged debt. In the letters, Allied stated that it was acting on behalf of Defendant LVNV Funding, LLC, to collect the debts. LVNV had not lent

Norman any money—in fact, Defendants admit that the debts were incurred originally to two non-party creditors more than seven years earlier. But at some point after Norman allegedly defaulted on the debts, LVNV purchased them from the creditors (or from another debt buyer) and contracted with Allied to collect on them. By May 2016, when Allied sent the collection letters, the statute of limitations had run, rendering both debts legally unenforceable. The letters each listed the amount owed and the original creditor, and read in relevant part:

> Our client [LVNV] is interested in resolving this Account and is willing to consider payment for less than the Amount Owed to satisfy your obligation. Although we are not obligated to accept any payment proposal, please telephone us to discuss potential settlement options.
> To make a payment, please telephone us at 866-466-3142 or mail your payment . . . . [Y]our account will be debited on the day we receive your payment. Your check will not be returned.
> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt . . . we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, . . . we will obtain and mail to you a verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.
> We look forward to receiving your payment.

All text in the letter appeared in the same size and font.

Based on these collection letters, Plaintiff Norman brings claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. She alleges that Defendants Allied and LVNV violated Sections 1692e, which prohibits misleading representations, and 1692g, which establishes protections and notice procedures by which consumers can challenge and obtain validation of the alleged debt.[1] Compl., ECF No. 1. Together, Defendants LVNV and Allied move for dismissal. Defs.' Mot., ECF No. 7-1.

---

[1] Plaintiff originally alleged violations of Sections 1692d and 1692f as well, but has since dropped those claims. Pl.'s Resp. 4 n.1, ECF No. 10. (Because Plaintiff's filings have no page numbers, all citations to Plaintiff's briefs refer to the ECF pagination.)

**II. Standard**

This motion is governed by the well-established standards of Rule 12(b)(6), as amplified by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III. Discussion**

Congress passed the FDCPA in an effort to end abusive debt collection practices, acknowledging the "abundant evidence" of "abusive, deceptive, and unfair" practices. 15 U.S.C. § 1692(a), (e). The Third Circuit has emphasized that the FDCPA is a remedial statute that "must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

To state a claim under the FDCPA, Plaintiff Norman must plausibly allege that (1) she is a consumer, (2) Defendants are debt collectors, (3) Defendants' challenged practice—the letters—involves an attempt to collect a debt as the Act defines it, and (4) that Defendants violated the FDCPA in attempting to collect the debt. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018). Defendants dispute only the second and fourth elements. Defs.' Mot. 6. LVNV disputes that it is a debt collector, and both Defendants dispute that the letters violated the Act. For the reasons that follow, I conclude that LVNV is a debt collector under the Act, and that Norman has adequately alleged two violations.

A. LVNV as a "debt collector" under the FDCPA

There are two ways in which a person or entity can qualify as a "debt collector" under the FDCPA. *See* § 1692a(6). The first definition encompasses "any business the principal purpose of which is the collection of any debts." *Id.* The second reaches any entity that "regularly collects or attempts to collect, directly or indirectly, debts owed . . . [to] another." § 1692a. Plaintiff initially alleged that LVNV satisfied both definitions, Compl. ¶¶ 5–6, but now argues only that LVNV falls within the "principal purpose" definition, Pl.'s Resp. 12. Defendant LVNV counters that, as a debt

buyer, it cannot be a debt collector under either definition, and regardless, Plaintiff has not alleged facts in support of the "principal purpose" definition. Defs.' Mot. 7–8; Defs.' Reply 6, ECF No. 14. I disagree and, for the reasons set forth below, hold that LVNV falls within the "primary purpose" definition, and further hold that Plaintiff's allegations, bolstered by LVNV's admission that it is a debt buyer, are an adequate basis for the claim against it.

Until recently, it was settled law in the Third Circuit that debt buyers like LVNV were debt collectors under the Act, because the debts they attempt to collect were in default when they bought them. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) ("[T]here is no question that the 'principal purpose' of [defendant's] business is the 'collection of any debts,' namely, defaulted obligations which it purchases . . . ."); *see also F.T.C. v. Check Inv'rs, Inc.*, 502 F.3d 159, 174 (3d Cir. 2007) (emphasizing that the focus of the debt collector analysis should be whether the debt was in default when it was acquired, joining the Fifth, Sixth, and Seventh Circuits), *abrogated in part by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017). But last year, a circuit split spurred the Supreme Court in *Henson* to review whether entities that regularly purchase debt originated by someone else and then attempt to collect on that debt "for their own account" [hereinafter "debt buyers"] are debt collectors under the Act. 137 S. Ct. at 1721.

Before addressing that question, though, the *Henson* Court paused to emphasize what it was *not* deciding. It explicitly declined to address whether those same debt buyers fall within the FDCPA's first definition of debt collector: ". . . any business the principal purpose of which is the collection of any debts." *Id.* The Court then turned to the "much narrowed question" of whether debt buyers fall within the Act's "regularly collects . . . debts owed . . . another" definition. Focusing on the fact that the "plain language" of the "regularly collects" definition hinges on whether the debt is "owed [to] another," the *Henson* Court determined that a debt buyer "may indeed collect debts for its own account without triggering the ['regularly collects'] statutory

4

definition." *Id.* at 1721–22.

Since *Henson*, decided in June 2017, three district courts in this Circuit have recognized its limited scope, and applied its precepts only to the "regularly collects" definition of a debt collector. *See, e.g.*, *Beard v. Ocwen Loan Servicing, LLC*, 2018 WL 638455, at *5 (M.D. Pa. 2018). Therefore, if an entity satisfies the "primary purpose" definition of a debt collector, the *Henson* case does not preclude FDCPA liability, even if the entity is attempting to collect a debt for itself." *Id.*; *accord Barbato v. Greystone All., LLC*, 2017 WL 5496047 (M.D. Pa. Nov. 16, 2017), *appeal docketed*, No. 18-1042 (3d Cir. Jan. 14, 2018); *Schweer v. HOVG, LLC*, 2017 WL 2906504 (M.D. Pa. July 7, 2017); *Tepper v. Amos Fin., LLC*, 2017 WL 3446886 (E.D. Pa. Aug. 11, 2017), *appeal docketed*, No. 17-2851 (3d Cir. Aug. 25, 2017).[2] In *Shweer*, the defendant's "principal purpose of business [was] to buy defaulted debts and thereafter attempt to collect those debts" through a separate collection agency. 2017 WL 2906504, at *1. Accordingly, the court concluded that the defendant fell within "the definition of a debt collector unaddressed by *Henson*," and that *Henson* did not shield the defendant from liability as a debt collector under the FDCPA. *Schweer*, 2017 WL 2906504, at *5.[3] Only one district court in this circuit has reached a contrary result, but that court did not specify which part of the FDCPA definition it relied upon, or even acknowledge that the definition has two parts, with *Henson* applying only to one. *See Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, 2017 WL 3593115, at *8–9 (D.N.J. Aug. 18, 2017).

Based on the explicit limiting language in *Henson*, I join the majority of courts within the

---

[2] As Plaintiff points out, Pl.'s Resp. 9 n.2, in addition to these post-*Henson* cases, the Eleventh Circuit case that led to the circuit split (the reasoning of which *Henson* eventually adopted as to "regularly collects") acknowledged that debt buyers would remain subject to the FDCPA's "principal purpose" definition. *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015) (as cited in *Henson*, 137 S. Ct. at 1721).

[3] Even when plaintiffs proceed on a "regularly collects" theory, where *Henson* would otherwise apply, courts have further limited *Henson's* relevance to those cases in which the defendant debt buyer can point to "sufficient record evidence" that it actually owned the debt. *See Beard*, 2018 WL 638455, at *5 (holding at summary judgment that the defendant debt buyer was "not shielded from FDCPA liability by the narrow holding of the *Henson* case, which only contemplated debt *owners* attempting to collect on their own accounts") (emphasis in original).

Third Circuit in holding that *Henson* applies only to FDCPA claims brought under the "regularly collects" definition of debt collector, and not to claims brought under the "principal purpose" definition. Therefore, debt buyers whose principal purpose of business is debt collection, either directly or through another collector, are debt collectors under the Act. *See Beard*, 2018 WL 638455, at *5; *Schweer*, 2017 WL 2906504, at *5 ("[T]he *Henson* Court also made clear that its holding in that matter was narrow, and did not address the applicability of [the 'principal purpose' definition]."); *see also Mitchell v. LVNV Funding, LLC*, 2017 WL 6406594, at *4 (N.D. Ind. 2017) ("*Henson* is not applicable to first ["principal purpose"] prong . . . ."); *Guzman v. Mel S. Harris & Assocs.*, *LLC*, 2018 WL 1665252, at *4 (S.D.N.Y. 2018) (holding that *Henson* limited only the "regularly collects" definition and, since the defendant was "in the business of collecting debts," the court "need not address" the defendant debt buyer's *Henson* argument, even though defendant "purchased debts for its own account").

Having determined that debt buyers like LVNV can be debt collectors under the Act, I next consider LVNV's argument that Plaintiff has not alleged facts showing that LVNV is a debt collector under the "primary purpose" definition. *See* Defs.' Reply 7–8. LVNV is correct that Plaintiff's allegations as to this element are few; she alleges that debt collection is the principal purpose of LVNV's business, and that Allied was collecting "for LVNV" when it sent the collection letters. Compl. ¶¶ 5–7. But she also attaches the letters themselves,[4] which state that Allied was contacting Plaintiff "on behalf of LVNV" and that the alleged debts were originated by third parties (creditors HSBC and General Electric). Moreover, undisputed evidence and admissions bolster Plaintiff's allegations. First, LVNV admits in its brief that it is in the business of debt-buying. Defs.' Mot. 6 (describing the business as a "post-default purchaser of debts"). Second, I take

---

[4] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10.

6

judicial notice of the fact that LVNV's website—a single, non-interactive page consisting of two paragraphs of text—describes the company as a buyer of consumer debt owned by banks, finance companies, and "other debt buyers." *See* http://lvnvfunding.com (last visited May 25, 2018); *see also* Fed. R. Civ. P. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). There is no reference to any other form of commercial activity. The site explains that LVNV outsources its "management" of the purchased debt to a single debt collector, Resurgent Capital Services LP, and the only interactive content on LVNV's site is a link to Resurgent's site. Resurgent then either collects the debt or outsources collection to yet another debt collector—presumably, Allied is one of those collectors. Simply because LVNV "outsources" its debt collection to Resurgent or other subcontractors does not mean that LVNV sheds its essential character as a debt collection business or is somehow converted into something other than a debt collector. Nor does LVNV's assertion that it is a "creditor" make it so. Absent evidence that LVNV engages in any lending, or has a principal purpose other than buying old debt in order to collect on it, Plaintiff has adequately plead that LVNV is a debt collector under the FDCPA.[5]

---

[5] Although beyond the scope of this Motion, I note for context that the precise relationship between LVNV and Resurgent has been a central and elusive point in other litigation against them. In a putative class action against LVNV, Resurgent, and a company called Sherman Capital in the Southern District of Indiana, the Court wrote: "The named Defendants are 'debt collectors' and, according to the Plaintiffs, are alter-egos of one another . . . . Sherman is alleged to be a limited liability company, primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts. LVNV is alleged to be the holding vehicle of data on behalf of unknown investors. Resurgent is a subsidiary of the other Defendants and is alleged to be the master servicer of the LVNV collateralized debt obligation." *Cox v. Sherman Capital LLC*, 2016 WL 274877, at *1 (S.D. Ind. Jan. 22, 2016). The nature of the companies' relationship proved a pivotal sticking point in that case. Later, in granting plaintiffs' motion to compel, the court wrote: "The instant situation is merely the continuation of a pattern of deliberate attempts by Defendants to obfuscate the information and evidence in this matter. That pattern began with the refusal of Defendants' witnesses to identify their roles in the various corporate entities under which Defendants operate. On June 13, 2013, [the] Court ordered Defendants' witnesses to respond to questions regarding Defendants' ownership interests during a round of jurisdictional discovery depositions. The pattern of obfuscation of information continued with Defendants' efforts to seal from public view the identities of legal entities created pursuant to state law that had been joined as parties to this matter." 2016 WL 7975817, at *1 (Feb. 5, 2016). A month after the court granted the plaintiffs' motion to compel, "the parties

Relatedly, LVNV insists that it cannot be liable under the Act because it "did not send the letter[s] or engage directly in any conduct to collect a debt from Plaintiff," and Plaintiff has not and cannot allege a basis for vicarious liability. Defs.' Reply 7–8. LVNV seems to argue that Plaintiff's Complaint has both curable and incurable defects—that Plaintiff has not alleged "supporting facts" showing that LVNV is vicariously liable for Allied's actions, and that, regardless, Plaintiff is "precluded" from arguing that LVNV is vicariously liable because LVNV is a creditor. However, vicarious liability is permissible under the FDCPA, as long as both entities are "debt collectors" within the Act. *See Pollice*, 225 F.3d at 404 (3d Cir. 2000) ("[A]n entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf."). Therefore, my conclusion above that Plaintiff has adequately pled that LVNV is a debt collector under the "principal purpose" definition disposes of both of LVNV's arguments. As explained in *Schweer*, "[t]he mere fact that [the defendant debt buyer] did not undertake or participate in independent collection actions does not shield it from liability, as vicarious liability may extend to a defendant for the actions of a party hired to collect a debt on the defendant's behalf." 2017 WL 2906504, at *4–5 (citing *Pollice*, and explaining that *Pollice* remained relevant post-*Henson* because the defendant debt buyer fit the "principal purpose" definition).

B. Alleged Violations

Having rejected Defendants' threshold argument that LVNV is not a debt collector, I next address their contention that Plaintiff has not pled a violation of the Act.

---

reported settlement of all claims." 2016 WL 7971711, at *1 (May 24, 2016). Because the court later denied an intervenor's motion to unseal the docket in that case, any information exchanged about the relationship between LVNV and Resurgent was never made public. *Id.* While not binding in any way on this case, this background helps to illustrate why plaintiffs may be unable to plead with particularity the nature of LVNV's business or its relationship with the "third-party" collectors that perform LVNV's core function.

1. **The Controlling Standard**

When deciding if debt collection conduct violates the FDCPA, courts employ a "least sophisticated debtor" standard, which seeks to "protect the gullible as well as the shrewd." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015); *accord Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993, 997 (3d Cir. 2011) (characterizing the least sophisticated debtor standard as a "low standard"). The standard "protects naive consumers, [but] also prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Greer v. Shapiro & Kreisman*, 152 F. Supp. 2d 679, 683–84 (E.D. Pa. 2001) (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)). The standard does not indulge the "willfully blind," because "even the least sophisticated consumer is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). The standard is an objective one, "meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Tatis*, 882 F.3d at 427 (3d Cir. 2018). In this way, the FDCPA enables sophisticated consumers "as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act but who . . . benefit from the deterrent effect of civil actions brought by others." *Jensen*, 791 F.3d at 419.

2. **Section 1692e – Misleading Representations**

Plaintiff alleges that the letters violated Section 1692e, which prohibits "*any* false, deceptive, *or misleading* representations" in the collection of any debt. *Tatis*, 882 F.3d at 428 (emphasis in original). Applying § 1692e, the Third Circuit has held that, depending on context, "a completely accurate statement can be deceptive or misleading." *Id.* at 429 *(*citing *Campuzano*, 550 F.3d at 301). A communication is deceptive if it "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 429. The section includes a non-exhaustive list of prohibited conduct, including making false representations as to the character or "legal status

9

of any debt," § 1692e(2), "threatening to take any action that cannot legally be taken," § 1692e(5), and using "deceptive means" to "attempt to collect any debt," § 1692e(10).

Plaintiff asserts that the following language in the collection letters from Allied was misleading or deceptive because unsophisticated consumers "could be misled into thinking Allied could legally enforce the debt" when in fact the debt was time-barred:

> Our client [LVNV] is interested in resolving this Account and is willing to consider payment for less than the Amount Owed to satisfy your obligation. Although we are not obligated to accept any payment proposal, please telephone us to discuss potential settlement options.

Pl.'s Suppl. Br. 3–5, ECF No. 13 (citing *Tatis*, 882 F.3d at 430). Defendants counter that this language "could not be construed by the least-sophisticated debtor . . . [as suggesting that] she had a legal obligation to pay the time-barred debt," or that the debt was a "legally enforceable obligation." Defs.' Reply 6.

Before the Third Circuit's 2018 decision in *Tatis*, this may have been a close question. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011) (holding that debt collectors may seek voluntary repayment of time-barred debts as long as they do not threaten litigation, and finding that the collector's request that the consumer call "to resolve the issue" did not amount to such a threat). Now, with the benefit of *Tatis*, it is not. *Tatis* clarified that collection letters can violate § 1692e without explicitly threatening litigation if the letters could mislead debtors into believing they have a legal obligation to repay time-barred debts through use of words like "settlement" and "settlement offer." 882 F.3d at 425, 428, 430.

*Tatis* undoubtedly controls here. Like Plaintiff Norman, Ms. Tatis brought an FDCPA action against Allied based on a letter it sent on behalf of LVNV to collect a time-barred debt

10

originated by a third-party creditor.[6]  The disputed language in Tatis's collection letter read:

> [LVNV] is willing to accept payment in the amount of $128.99 in settlement of this debt.  You can take advantage of this settlement offer if we receive payment of this amount or if you make another mutually acceptable payment arrangement within 40 days . . . .

*Id.* at 422.  Based on this language, the Third Circuit concluded that, "in the specific context of a debt-collection letter, the least sophisticated debtor could be misled into thinking that 'settlement of the debt' referred to the creditor's ability to enforce the debt in court rather than a mere invitation to settle the account."  Here, as in *Tatis*, the collection letter states that Allied is not obligated to accept any payment proposal, and asks the consumer to call to discuss "potential settlement options."

Defendants attempt to distinguish this case from *Tatis* by pointing to minor variations in language—*i.e.*, "settlement options" instead of "settlement offer"—and to the fact that the *Tatis* letter included an exact payment amount and a time limit for accepting it. Defs.' Reply 6.  But I can discern no meaningful difference in these settlement invitations.  Nor do I see how the inclusion of an exact amount or date alters the analysis—certainly, it was not important to the *Tatis* court, which made only a passing reference to it in their facts section—and Defendants do not attempt to explain the importance of such details.  In fact, that the letters here did not include a payoff amount, but instead stated that Allied was "not obligated to accept any payment proposal," arguably increasing the likelihood that a consumer could be misled as to the legal status of the debt.  After all, Allied's statement that it is "not obligated" to accept any proposal necessarily implies that Allied has some legal recourse if it and the consumer cannot agree on a "settlement."

Here, as in *Tatis*, the context in which the collection letters were received "indicate[s] that, far from being a 'bizarre or idiosyncratic interpretation' . . . , interpreting the settlement offer as creating a legally-enforceable obligation is a mistake even a debtor 'willing to read with care' might

---

[6] Although *Tatis* involved the same collection agency (Allied) acting on behalf of the same debt buyer (LVNV), it is not related to this case.  I note that, in *Tatis*, the question of whether LVNV is a debt collector under the FDCPA was not before the Third Circuit, presumably because LVNV was not a named defendant. *See id.* at 428.

11

make." *Id.* at 430. I therefore conclude that Norman has plausibly alleged that Allied's letters violated § 1692e.

### 3. Section 1692g – Overshadowing the Validation Notice

Next, Plaintiff claims that Allied's letters violated Section 1692g. That section of the FDCPA grants consumers 30 days to dispute the validity and request verification of any alleged debt, and requires debt collectors to "cease collection of the debt" until they have obtained and provided that verification to consumers. § 1692g(a)–(b). It also imposes on debt collectors an obligation to inform consumers of these dispute and verification rights by sending written notice to the consumer within 5 days after the initial communication related to the debt. § 1692g(a). The Act does not prescribe particular language that collectors must use in the notice, but requires them to include: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) statements that unless the consumer disputes the validity of the debt within 30 days of receiving the notice, the collector will assume it is valid; (4) that if the consumer notifies the collector in writing within the 30-day period that the debt it is disputed, the collector will obtain and mail verification of the debt to the consumer; and (5) that, upon the consumer's written request within the 30-day period, the collector will provide the original creditor's name and address. *Id.* Finally, it stipulates that the collector's "activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's [dispute and verification] right." § 1692g(b).

The Third Circuit has emphasized that Congress's purpose in drafting § 1692g was "to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson*, 225 F.3d at 354 (3d Cir. 2000). Thus, debt collectors must do more than merely include the validation notice in their collection letters to comply with § 1692g—they must "effectively convey [the notice of rights] to the debtor." *Id.*; *accord Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("[The] statutory notice must not only explicate a debtor's rights; it must do so effectively."). The

12

notice, therefore, must be "in print sufficiently large to be read" and "sufficiently prominent to be noticed." *Graziano*, 950 F.2d at 111. And importantly, it "must not be overshadowed or contradicted by accompanying messages" from the debt collector. *Id.*[7] Although there are "manifold ways, some subtle and some not" in which a debt collector may overshadow a validation notice, *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 106 (1st Cir. 2014), it is clear that a validation notice is "overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights," *Caprio*, 709 F.3d at 149 (3d Cir. 2013). Under § 1692g, as with § 1692e, a collector's notice is likewise considered overshadowing or contradictory if "it can reasonably be read to have two or more different meanings, one of which is accurate." *Greer*, 152 F. Supp. 2d at 684.

Plaintiff does not dispute that Allied included the required information in its validation notice, which appeared as the fourth paragraph of both collection letters. Rather, Plaintiff posits two ways in which the notice was overshadowed or contradicted by the content and structure of the letter. Pl.'s Resp. 14–18. First, Plaintiff argues that the notice violated the Act because it was "not bolded, italicized nor underlined so as to set it apart" from the other text in the letter. *Id.* at 18. I am not persuaded by this, as the Third Circuit has held that a validation notice is not necessarily overshadowed merely because it is "presented in the same font, size and color type-face" as the rest of the letter. *Wilson*, 225 F.3d at 356. Here, Allied's validation notice was printed legibly on the front of the letter and not overshadowed by large, brightly-colored, or bolded text elsewhere in the letter, and was therefore "sufficiently prominent." *See Caprio*, 709 F.3d at 148, 154.

Far more compelling is Norman's second argument—that other language in the letter rendered the validation notice unclear. According to Plaintiff, Allied's statement that checks would

---

[7] Congress added the "overshadow" language to § 1692g(b) in 2006. The Third Circuit has since described that amendment as an express "codification of the 'overshadowed or contradicted' rule or gloss previously adopted by the courts themselves." *Caprio*, 709 F.3d at 148–49 (3d Cir. 2013).

be debited immediately and would not be returned, coupled with "anticipatory language welcoming payment"—in the absence of any clarifying language—overshadowed the validation notice such that it would leave the least sophisticated consumer uncertain as to how sending a payment would affect her dispute rights. *See* Pl.'s Resp.18–19. If she sent a payment, would she be giving up her rights to dispute or verify the debt? If she disputed the debt, and then sent payment (or did both simultaneously), and the debt were found invalid, would Allied return her payment? *Id.* In response, Defendants insist that the notice contained no "demanding, confusing, or contradictory language"—specifically, no contradicting timelines—and cite district court cases holding that a collector's request for payment did not render the validation notice unclear.

A collector's request for payment in the same letter as the validation notice can, but does not necessarily, violate § 1692g. *Compare Wilson*, 225 F.3d at 356 (finding no overshadowing where the letter offered "the opportunity to pay this bill immediately") *with Graziano*, 950 F.2d at 111 (holding that a demand for payment within 10 days and a threat of legal action constituted a "contradictory demand" that rendered the validation notice ineffective) *and Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 525 (E.D. Pa. 1996) (holding that "[t]o avoid trouble, please pay immediately" overshadowed the validation notice). The strongest support for Defendants' position comes from *Wilson*, where the Third Circuit found no § 1692g violation when the following language appeared before the validation notice paragraph:

> We shall afford you the opportunity to pay this bill immediately and avoid further action against you.
> To insure immediate credit to your account, make your check or money order payable to [the collector].

*See* 225 F.3d at 352. The Court of Appeals concluded that this language did not overshadow the validation notice, even though it requested immediate payment, because the letter "presented [the consumer] with two options: (1) an opportunity to pay the debt immediately and avoid further action, or (2) notify [the collector] within thirty days . . . that he disputes the validity of the debt"

14

and did not "suggest that [the consumer] forego the second option in favor of immediate payment." *Id.* at 356. Importantly, the Third Circuit found that no contradiction existed between the paragraphs above, and therefore no "reconciling statement" was required. *Id.* (citing *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997)). Where an "actual or apparent" contradiction exists, the *Wilson* Court explained, the letter must include a reconciling statement to avoid the confusion that would result if the letter does not explain how the demand for payment "fit[s] together" with the consumer's dispute rights.

Although this is admittedly a closer question than Plaintiff's § 1692e claim, I am persuaded that the letter, taken as a whole, would leave the least sophisticated consumer uncertain as to her dispute rights under the Act. I conclude that Allied's letter did effectively create confusion, and therefore required a reconciling statement. *See id.* To be sure, Allied's request for payment did not "standing alone" violate the Act. *See Wilson*, 225 F.3d at 357. Rather, it was Allied's request for payment and warning that checks would be immediately deposited and not returned, without "explaining that its demand did not override the consumer's rights under section 1692g" that rendered the validation notice ineffective. Allied's failure to include a "reconciling statement" leaves the least sophisticated consumer—and indeed, this Court—uncertain of how Allied's demands "fit[] together" with her dispute and validation rights. Plaintiff has therefore alleged that the letter violated of § 1692g. *See Caprio*, 709 F.3d at 152.

## IV. Conclusion

Because debt buyers like LVNV are debt collectors under the Act, and because Plaintiff has adequately alleged that the collection letter violated Sections 1692e and 1692g, Defendants' Motion to Dismiss is denied.

                                                    /s/ Gerald Austin McHugh
                                                    United States District Judge